UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRON LAMAR HEREFORD,

       Petitioner,                              No. 04-40293

v.                                        District Judge Paul V. Gadola

MILLICENT WARREN,                 Magistrate Judge R. Steven Whalen

       Respondent.
_____/

**REPORT AND RECOMMENDATION**

On October 13, 2004, Petitioner Darron Hereford filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging his conviction in the Oakland County, Michigan Circuit Court for armed robbery. Before the Court is Petitioner's Motion for Summary Judgment [Docket #34], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1] For the reasons set forth below, I recommend that Petitioner's Motion be GRANTED, and that the Court issue a conditional writ of habeas corpus.

**I.   PROCEDURAL HISTORY**

Petitioner, having waived his right to trial by jury, was tried in a bench trial before the Honorable Rudy J. Nichols of Oakland County Circuit Court. He was tried along with a co-

---

[1]The Respondent filed an Answer to the Petition, but did not separately respond to the Motion for Summary Judgment.

defendant, Kyle Davis, although Mr. Davis elected to have a jury decide his case. Petitioner was ultimately convicted of armed robbery, M.C.L. 750.529, and sentenced to a prison term of 9 to 20 years.

Petitioner took an appeal as of right to the Michigan Court of Appeals. The Claim of Appeal was filed on May 16, 2000, and on September 6, 2000, the Petitioner, through appointed counsel, filed his brief on appeal. That brief did not address the Sixth Amendment right to counsel matter at issue in the present motion. However, while Petitioner's case was pending in the Court of Appeals, he filed a motion to file supplemental brief. That motion was granted on March 28, 2001, and Petitioner's counsel filed a supplemental brief raising arguments stemming from a previously untranscribed mid-trial bench conference between the prosecutor, co-defendant's counsel and the trial judge, concerning a prosecution witness (Alvin Smith)who was to testify at trial.[2] Petitioner's attorney was not present at that conference. Alvin Smith was a codefendant who had been tried and convicted separately.

On December 3, 2002, the Court of Appeals affirmed Petitioner's conviction in an unpublished per curiam decision. However, that opinion was completely silent as to the *ex parte* bench conference that formed the basis of Petitioner's supplemental brief. On December 23, 2002, Petitioner filed a motion for rehearing based on the court's failure to address his supplemental issues. The Court of Appeals granted the motion for rehearing, and

---

[2]It appears that the transcript of this *ex parte* conference was neither noted in the trial court docket entries nor provided to assigned appellate counsel along with the trial transcripts; hence, it was not addressed in Petitioner's original Court of Appeals brief.

-2-

issued a new opinion on January 28, 2003, again affirming Petitioner's conviction. Addressing the issue of the *ex parte* bench conference, the Court stated as follows:

> "We agree with defendant that it was improper to conduct a bench conference without defense counsel's presence. See generally *People v Riggs*, 223 Mich App 662, 677; 568 NW2d 101 (1997) (Sixth Amendment right to counsel attaches at 'critical stage' of proceedings); *People v Gonzalez*, 197 Mich App 385, 402; 496 NW2d 312 (1992) (improper ex parte communications deny right to fair trial). However, we conclude that the error was harmless beyond a reasonable doubt. *See People v Watson*, 245 Mich App 572, 585; 629 NW2d 411 (2001)."

On October 8, 2003, the Michigan Supreme Court denied leave to appeal, over the dissent of Justice Kelly. On October 13, 2004, Petitioner filed his petition for writ of habeas corpus in this Court. On April 20, 2006, he filed the present Motion for Summary Judgment, raising only the issue relating to the *ex parte* bench conference.

## II.   FACTS

The charged offense involved the armed robbery of a Hungry Howie's restaurant in Southfield, Michigan. The Court of Appeals summarized the evidence against the Petitioner as follows:

> "The assistant manager of the restaurant testified extensively regarding his recollections of the armed robbery. Both the assistant manager and the restaurant's part owner recalled that the assistant manager had worked with defendant for at least a month, on several occasions each week. The assistant manager testified repeatedly and with certainty that he recognized defendant as one of the robbers when defendant's mask briefly slipped from his face. A police officer who responded to the restaurant after the robbery testified that the assistant manager positively identified defendant as a participant in the robbery. Codefendant Smith also offered testimony that defendant participated in the robbery."

As to co-defendant Smith's testimony at Petitioner's trial, the Court of

Appeals stated:

> "Regarding defendant's challenge to the circuit court's finding that defendant possessed a gun during the robbery, codefendant Smith's testimony to this effect constituted the sole evidence of record supporting the court's finding. Smith's testimony directly contradicted the assistant manager's recollection that defendant did not have the gun during the robbery. Although Smith never testified that anyone other than defendant had the gun during the robbery, Smith's account of the crime otherwise appeared vague and somewhat inconsistent with the victim's recollections. Nonetheless, the circuit court apparently believed at least that portion of Smith's testimony recounting defendant's possession of a weapon...."

During his testimony, Smith indicated that he wanted to speak with his attorney. The court took a break so that Smith's lawyer could be located (Tr. 3-15-00, 61-63). During the break, Petitioner's attorney, William Mitchell, asked permission to attend an arraignment in another courtroom (Tr. 3-15-00, 63). After Mr. Mitchell left, the prosecutor asked to approach the bench with codefendant Davis's lawyer, Sharon Woodside:

**Mr. Lynch (the prosecutor)**: Your Honor, may Ms. Woodside and I approach?  Maybe she can speak on behalf of Mr. Mitchell.

**The Court**: We really shouldn't.  Is this just your case?

**Mr. Lynch**: No. This is Hereford, but I'm not going to really go into a whole lot. I just want to ask the Court a question.  I think I might be able to get around it.  It doesn't have to be on the record.   I might have a way to resolve this problem.  When myself and the detective spoke to him outside–

(Bench Conference 14:57:30 – 14:57:55)

**Mr. Lynch**: –Okay. That was it Judge.  (Tr. 3-15-00, 63-64).

The Petitioner was not asked whether he would consent to having Ms. Woodside, co-defendant's counsel, stand in for his own attorney, nor did Ms. Woodside indicate that she

-4-

was willing to do so.

After the Michigan Court of Appeals granted leave to file a supplemental brief, Petitioner provided a transcript of the bench conference, which revealed the following *ex parte* exchange:

> (Mr. Lynch and Ms. Woodside approach the bench)
>
> **The Court**: (inaudible)
>
> **Mr. Lynch**: No. It's not her for - - I'm not going to go into it a whole lot. I just want to ask a quick question. I think maybe he'll get around to it. It doesn't have to be on the record. I might have a way to resolve this problem. When myself and the detective spoke to him (Smith) outside, I went over his Fifth Amendment rights with him and he said he wanted to waive those and testify. Okay. Mr. Williams had told me after the trial that he was going to testify. In fact, we had a sense to get adjourned because- -
>
> **The Court**: But, you know - - see, he's mentally slow and- -
>
> **Mr. Lynch**: Well, that's what I mean.
>
> **The Court**: I don't want to- -
>
> **Mr. Lynch**: All I want to indicate is that his mom said, "I don't think he understands what you were asking him." Would you have him talk to his mom?
>
> **The Court**: Yeah. Uh-huh.
>
> **Mr. Lynch**: Okay.
>
> **The Court**: We'll wait for him.
>
> **Mr. Lynch**: Okay. I mean - - okay, that was it your Honor. (Excerpt of Bench Conference, pp. 2-3).

When Petitioner's counsel returned to the courtroom, the examination of Alvin Smith

continued. Over Petitioner's objection, the judge permitted the prosecutor to treat Smith as a hostile witness and to ask leading questions (Tr. 3-15-00, 72-73, 80). Although the prosecutor at the *ex parte* bench conference stated that he and the detective in charge had just spoken to Smith in the hallway, Smith testified that he could not remember if he had spoken with the detective since the previous December (Tr. 3-15-00, 74-76)**.**

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> a.   resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> b.   resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*,

529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id*.

*Williams* also made it clear that under the "unreasonable application" clause of §2254(d), it is not necessary that the controlling Supreme Court case be factually on all fours with the case under review. Instead, *Williams* held that "a state-court decision...involves an unreasonable application of this Court's precedent if the state court...unreasonably refuses to extend that principle to a new context where it should apply." *Id.*, 529 U.S. at 412.

### IV.  ANALYSIS

Petitioner seeks summary judgment on the issue of whether he was denied his Sixth Amendment right to counsel by his attorney's absence from a mid-trial sidebar conference between the prosecutor and the judge in a bench trial. In resolving this issue, the pertinent questions are: (1) was the sidebar conference a critical stage of the proceedings; (2) was the Petitioner's attorney completely absent from that proceeding; and (3) is prejudice presumed,

without reference to a harmless error analysis?

### A.  Legal Principles

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court held that the denial of counsel at a critical stage of criminal proceedings constitutes structural error, that is, it is *per se* reversible error that can never be treated as harmless. *See also Roe v. Flores Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Cronic* to the effect that where there is a complete absence of counsel at a critical stage, "'no showing of prejudice [is] required' because 'the adversary process itself [is] presumptively unreliable.'").

*Cronic* described three circumstances under which a defendant would not have to show actual prejudice: (1) when counsel was completely absent during a critical stage of the proceedings; (2) when counsel was present, but failed to subject the prosecution's case to meaningful adversarial testing; and (3) when the circumstances of the trial prevent counsel from affording effective representation. *Id.*, 466 U.S. at 656. The present case involves the first category–the complete absence of counsel at a critical stage.

In *French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003), the Sixth Circuit dispelled any notion that the relevant language in *Cronic* was mere dicta:

> "Despite the appellant's attempt to characterize *Cronic's* language as dicta, the Court has often held, both before and after *Cronic*, that absence of counsel during a critical stage of a trial is per se reversible error."

Citing *Holloway v. Arkansas*, 435 U.S. 775, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), and *Brecht v.*

*Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Court in *French* concluded, "*Cronic* correctly summarizes federal law when it states that absence of counsel during a critical stage of a trial amounts to constitutional error." *French*, 332 F.3d at 438.

In *United States v. Minsky*, 963 F.3d 870 (6th Cir. 1992), the Court held that a sidebar conference during a criminal trial is a critical stage of the proceedings. In *Minsky*, the judge held an *ex parte* bench conference with the prosecutor as part of his *in camera* review of FBI reports that the defense had requested under the Jencks Act, 18 U.S.C. §3500, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Applying the Supreme Court's decision in *Cronic*, the Court concluded, "We hold that the *ex parte* sidebar conference violated Minsky's right to a fair trial and was a Sixth Amendment violation." *Minsky*, 963 F.2d at 874. Quoting *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir. 1969), the *Minsky* Court further held, "[I]t is improper for the prosecutor to convey information or to discuss *any* matter relating to the merits of the case or sentence with the judge in the absence of counsel" (emphasis added), and was adamant and vigorous in its condemnation of *ex parte* communications. *Minsky*, 963 F.3d at 874. *Minsky* acknowledged that there might be rare situations where *ex parte* communications would be permissible, but held that "*[e]x parte* proceedings 'can only be justified and allowed by compelling state interests.'" *Id*., citing *In re Taylor*, 567 F.2d 1183, 1188 (2nd Cir. 1977). Furthermore, the prosecution bears a heavy burden of justifying *ex parte* communications. *Minsky*, at 874.

In *Van v. Jones*, __F.3d __, 2007 WL 91660 (6th Cir. 2007), the Court undertook an historical exegesis of Sixth Amendment "critical stage" jurisprudence, and, citing *Minsky*,

acknowledged that "[i]n 1992, we held that a sidebar bench conference during a criminal trial was a critical stage." The Court also reaffirmed *Minsky's* holding that under *Cronic*, counsel's complete absence from a sidebar conference is constitutional error without any showing of prejudice.[3]

In *United States v. Carmichael*, 232 F.3d 510 (6th Cir. 2000), the majority distinguished *Minsky* in upholding an *ex parte* sidebar conference between the judge and the prosecutor.[4] In *Carmichael*, the defense sought production of Title III wiretap transcripts under *Brady* and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), claiming that they could be used to impeach the testimony of a prosecution witness. The government claimed, however, that the wiretaps contained nothing that implicated its witness, and that because the wiretaps were ongoing, revealing their existence would have "blown" a continuing investigation. Rather than conduct an *in camera* review of the transcripts, the judge, during trial, twice called the prosecutor to the bench for *ex parte* discussions of what was on the wiretap recordings. The defendant's attorney did not object

---

[3]*Van* held that a pretrial consolidation/severance hearing was not a critical stage. In so finding, the Court, drawing on precedent from the U.S. Supreme Court and the Sixth Circuit, including *Minsky*, formulated the following working definition of a "critical stage": "Whether it was a critical stage depends on whether there was a reasonable probability that [the defendant's] case could suffer significant consequences from his total denial of counsel at that stage." As the Court recognized, that definition would completely support the Sixth Circuit's earlier holding in *Minsky* that a mid-trial bench conference is a critical stage.

[4]*Carmichael's* discussion of *Minsky* is dicta. The basis of the Court's decision was that the defendant "waived his right to raise this issue on appeal." 232 F.3d at 518.

to this procedure. Recognizing *Minsky's* holding that *ex parte* approaches "can only be justified and allowed by compelling state interests," the Court found that in Carmichael's case, the government had successfully met its burden.[5]

### B.     Application

In the Petitioner's case, the prosecutor and the judge discussed, in the complete absence of Petitioner's counsel, matters related to the testimony of prosecution witness Alvin Smith, a co-defendant who had been tried and convicted separately. Petitioner's counsel was not even in the courtroom at that time, and the judge remarked, "We really shouldn't. Is this just your case?" (Tr. 3-15-00, 63) (apparently addressing co-defendant Davis's counsel). The prosecutor replied, "no this is Hereford, but I'm not going to really go into a whole lot." *Id*.

Under *Minsky*, this *ex parte* bench conference was a critical stage of the proceedings. Indeed, the Michigan Court of Appeals found as such in its opinion of rehearing, at p. 5:

> "We agree with defendant that it was improper to conduct a bench conference without defense counsel's presence. See generally *People v Riggs*, 223 Mich

---

[5]In distinguishing *Minsky*, the *Carmichael* Court used the unfortunate phrase that "the government provided a *reasonable justification* for its request." 232 F.3d at 519 (emphasis added). Apart from the fact that this language is dicta, it is, as Judge Keith pointed out in his dissent, incorrect: "The majority manufactures its own 'reasonable justification' standard, and substitutes this standard for the 'compelling state interest' standard imposed by *Minsky*. The majority's invented standard improperly lowers the government's 'heavy' burden to demonstrate a compelling state interest." 232 F.3d at 524, fn. 1 (dissenting opinion of Keith, J.). However, given that the *Carmichael* majority clearly cited the "compelling state interest" standard set forth in *Minsky*, it appears that its "reasonable justification" language was merely a poor choice of words. In any event, it is very clear that it is the "compelling state interest" standard that correctly states the law to be applied in the present case.

App 662, 677; 568 NW2d 101 (1997) (Sixth Amendment right to counsel attaches at 'critical stage' of proceedings); *People v Gonzalez*, 197 Mich App 385, 402; 496 NW2d 312 (1992) (improper ex parte communications deny right to fair trial)."

Furthermore, unlike the factual situation in *Carmichael*, the Respondent cannot come close to meeting its heavy burden of showing a compelling state interest that would justify excluding Petitioner's counsel from the bench conference. It must be noted that the co-defendant's counsel was allowed to be present, and there appears to be no reason, other than perhaps impatience on the part of the prosecutor, why the judge couldn't have waited until Petitioner's own lawyer returned from the matter he had in another judge's courtroom.[6]

---

[6]The presence of the lawyer for Petitioner's co-defendant does not cure the error. Neither Petitioner nor his attorney consented to Ms. Woodside standing in, and the interests of Petitioner and Davis, as co-defendants, were adverse. Petitioner's case is therefore distinguishable from *Carroll v. Renico*,_F.3d_, 2007 WL 283827 (6th Cir. 2007), where the defendant's attorney consented to and thanked co-defendant's counsel for standing in during jury reinstruction, where the judge acknowledged that co-counsel "stood in," and where codefendant's counsel in fact objected to the instruction on behalf of both defendants. In the present case, neither the Petitioner or his counsel was asked if Ms. Woodside could "stand in" at the sidebar conference, Ms. Woodside herself did not acknowledge or agree that she was standing in, and in fact, she said nothing at all during the entire episode. Indeed, at the time he cross-examined Davis, Petitioner's own counsel was not even aware that the sidebar conference had occurred.

Thus, the Petitioner cannot be said to have knowingly and voluntarily waived his Sixth Amendment right to have his own attorney present. In this regard, *United States v. Olden*, 224 F.3d 561, 569 (6th Cir. 2000), stated:

> "We hold that just as a district court is required to apprise a defendant seeking to represent himself of the nature of his Sixth Amendment rights and the consequences that attend waiver of those rights, *see United States v. Hernandez,* 203 F.3d 614, 625-26 (9th Cir.2000), a similar colloquy is required when, at any point in a trial, a criminal defendant agrees to accept the substitute counsel of a co-defendant. Such an explanation is contemplated by

Finally, counsel's absence at this critical stage was structural error, and the Michigan Court of Appeals unreasonably applied the Supreme Court's decision in *United States v. Cronic* by undertaking a harmless error analysis.[7] Having found that the Petitioner was deprived of counsel at a critical stage of the proceedings, the Michigan court should have found *per se* reversible error under *Cronic*. The Michigan courts made the same error here that they made in *French v. Jones*, where the Sixth Circuit, citing *Cronic*, held:

> "In light of clear federal law, the Michigan courts unreasonably applied harmless error analysis to French's deprivation of counsel during the supplemental instruction. The district court properly granted the writ of habeas corpus." 332 F.3d at 438.

In his motion for summary judgment, Petitioner makes a persuasive argument that the error was not in fact harmless. However, under *Cronic* that argument is superfluous. There is no need to undertake a harmless error analysis. The exclusion of counsel was *per se*

---

Rule 44(c), and mandated by the Constitution's requirement that we recognize a Sixth Amendment waiver only when a criminal defendant knowingly, intelligently, and voluntarily agrees to surrender his right to counsel."

*Carroll* found that the *Olden* procedure was not required by Supreme Court precedent, and therefore declined to apply it to a habeas case under §2254. *(But see* Judge Clay's dissenting opinion in *Carroll)*. Nevertheless, the *Carroll* majority did recognize that the Michigan court's solution in that case was "not the ideal solution." In any event, in the Petitioner's case, unlike *Carroll*, there was absolutely no indication from anyone–the Petitioner, his attorney or attorney Woodside–that an understanding had been reached regarding co-counsel standing in for Petitioner's lawyer. Rather than the less-than-ideal solution in *Carroll*, the trial court here offered no solution.

[7] The unreasonableness of the Court of Appeals' discussion of harmless error is underscored by its reliance on *People v. Watson*, 245 Mich.App. 572, 585, 629 N.W.2d 411 (2001), which dealt with a Confrontation Clause issue, not a denial of counsel issue.

constitutional error, and based on the Michigan courts' unreasonable application of *Cronic*, Petitioner must be granted a writ of habeas corpus.

## IV.   CONCLUSION

I recommend that Petitioner's Motion for Summary Judgment be GRANTED, and that a conditional writ of habeas corpus be GRANTED. I further recommend that if a date for a new trial is not scheduled within 120 days, Petitioner be unconditionally released.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 21, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 21, 2007.

S/G. Wilson
Judicial Assistant

-15-